Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY KORTIS, | Case No: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| CLOUDERA, INC., ROBERT BEARDEN, PAUL CORMIER, PETER FENTON, GARY HU, KEVIN KLAUSMEYER, JESSE A. LYNN, ROSE SCHOOLER, and MIKE STANKEY, | |
| Defendants. | |

### COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Jeffrey Kortis ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

### NATURE OF THE ACTION

1.  This is an action against Cloudera, Inc. ("Cloudera" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a)

1

and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Cloudera by Sky Parent Inc. ("Parent") and Project Sky Merger Sub Inc. ("Merger Sub"). Parent and Merger Sub are subsidiaries of investment funds advised by private equity firms Clayton, Dubilier & Rice, LLC ("CD&R") and Kohlberg Kravis Roberts & Co. L.P. ("KKR").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, and the alleged misstatements entered and the subsequent damages occurred in this District.

5.     In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff is, and has been at all relevant times hereto, an owner of Cloudera common stock.

7. Defendant Cloudera is an enterprise data cloud company. Cloudera sells subscriptions and services for its machine learning and analytics platform, which is optimized for the cloud. This platform delivers an integrated suite of capabilities for data management, machine learning and advanced analytics. The Company is incorporated in Delaware. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "CLDR."

8. Defendant Robert Bearden ("Bearden") is Chief Executive Officer ("CEO") and a director of the Company.

9. Defendant Paul Cormier ("Cormier") is a director of the Company.

10. Defendant Peter Fenton ("Fenton") is a director of the Company.

11. Defendant Gary Hu ("Hu") is a director of the Company.

12. Defendant Kevin Klausmeyer ("Klausmeyer") is a director of the Company.

13. Defendant Jesse A. Lynn ("Lynn") is a director of the Company.

14. Defendant Rose Schooler ("Schooler") is a director of the Company.

15. Defendant Mike Stankey ("Stankey") is a director of the Company.

16. Defendants Bearden, Cormier, Fenton, Hu, Klausmeyer, Lynn, Schooler, and Stankey are collectively referred to herein as the "Individual Defendants."

17. Defendants Cloudera and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

18. On June 1, 2021, Cloudera announced that it had entered into a definitive agreement to be acquired by affiliates of CD&R and KKR for $16.00 per share in cash. The press release announcing the Proposed Transaction states, in pertinent part:

Cloudera Enters into Definitive Agreement to be Acquired by Clayton, Dubilier & Rice and KKR for $5.3 Billion

Cloudera Stockholders to Receive $16.00 Per Share in Cash

NEWS PROVIDED BY
**Cloudera, Inc.**
Jun 01, 2021, 07:02 ET

SANTA CLARA, Calif., June 1, 2021/PRNewswire/ -- Cloudera, (NYSE: CLDR), the enterprise data cloud company, today announced that it has entered into a definitive agreement to be acquired by affiliates of Clayton, Dubilier & Rice ("CD&R") and KKR in an all cash transaction valued at approximately $5.3 billion. The transaction will result in Cloudera becoming a private company and is expected to close in the second half of 2021.

The Board of Directors of Cloudera (the "Board") has unanimously approved the transaction and recommends that the Cloudera shareholders approve the transaction and adopt the merger agreement. Entities related to Icahn Group, collectively holding approximately 18% of the outstanding shares of Cloudera common stock, have entered into a voting agreement pursuant to which they have agreed, among other things, to vote their shares of Cloudera common stock in favor of the transaction.

The transaction delivers substantial value to Cloudera shareholders, who will receive $16.00 in cash per share, representing a 24% premium to the closing price as of May 28, 2021 and a 30% premium to the 30-day volume weighted average share price.

"This transaction provides substantial and certain value to our shareholders while also accelerating Cloudera's long-term path to hybrid cloud leadership for analytics that span the complete data lifecycle - from the Edge to AI," said Rob Bearden, CEO of Cloudera. "We believe that as a private company with the expertise and support of experienced investors such as CD&R and KKR, Cloudera will have the resources and flexibility to drive product-led growth and expand our addressable market opportunity."

"We very much look forward to working with Cloudera as it continues to execute its long-term transformation strategy," said Jeff Hawn, CD&R Operating Partner who will serve as Chairman of the company upon the close of the transaction. "The company has made significant progress establishing the Cloudera Data Platform (CDP) as a leader in hybrid and multi-cloud analytics, and we believe that our experience and capabilities can offer valuable support to accelerate expansion into new products and markets." Mr. Hawn's past roles include serving as Chairman and Chief Executive Officer of Quest Software, Vertafore, and Attachmate.

"We have followed the Cloudera story closely for a number of years and are pleased to be supporting its mission of helping companies make better use of their data in the ever-evolving hybrid IT environment," said John Park, KKR Partner and Head of Americas Technology Private Equity. "We are excited to contribute to Cloudera's accelerated innovation efforts as a private company."

KKR is making the investment from its North American private equity funds, adding to KKR's experience helping to grow leading global technology businesses, including GoDaddy, Internet Brands, Epicor, BMC, Optiv, Calabrio, Corel and 1-800 Contacts. CD&R's investments in technology-related businesses include Epicor, Capco, m2gen, Sirius Computer Solutions, and TRANZACT.

Closing of the deal is subject to customary closing conditions, including the approval of Cloudera shareholders and antitrust approval. The agreement includes a 30-day "go-shop" period expiring on [July 1], 2021, which allows the Board and its advisors to actively initiate, solicit and consider alternative acquisition proposals from third parties – with an additional 10 days to negotiate a definitive agreement with qualifying parties. The Board will have the right to terminate the merger agreement to enter into a superior proposal subject to the terms and conditions of the merger agreement. There can be no assurance that this "go-shop" will result in a superior proposal, and Cloudera does not intend to disclose developments with respect to the solicitation process unless and until the Board receives an acquisition proposal that it determines is a superior proposal, or it otherwise determines such disclosure is required.

**First Quarter Fiscal 2021 Financial Results**

Cloudera will announce its first quarter fiscal year 2021 financial results in a separate release today. The press release will also be available on the Investor Relations section of Cloudera's website. Due to the announced transaction with affiliates of CD&R and KKR, Cloudera has cancelled its earnings conference call previously scheduled for June 2, 2021.

**Advisors**

Morgan Stanley & Co LLC is serving as exclusive financial advisor to Cloudera, and Latham & Watkins, LLP is serving as legal advisor to Cloudera. GCA Advisors, LLC, BofA Securities, William Blair & Company, L.L.C., Perella Weinberg Partners LP, Cowen and J.P. Morgan are serving as financial advisors and Kirkland & Ellis, LLP and Debevoise & Plimpton LLP are serving as legal advisor to CD&R and KKR. J.P. Morgan, Bank of America, and KKR Capital Markets have committed to providing debt financing for the transaction.

**About Cloudera**

At Cloudera, we believe that data can make what is impossible today, possible tomorrow. We empower people to transform complex data into clear and actionable insights. Cloudera delivers an enterprise data cloud for any data, anywhere, from

the Edge to AI. Powered by the relentless innovation of the open source community, Cloudera advances digital transformation for the world's largest enterprises. Learn more at Cloudera.com.

Cloudera and associated marks are trademarks or registered trademarks of Cloudera, Inc. All other company and product names may be trademarks of their respective owners.

**About Clayton, Dubilier & Rice**

CD&R is a private investment firm with a strategy predicated on building stronger, more profitable businesses. Since inception, CD&R has managed the investment of more than $35 billion in 100 companies with an aggregate transaction value of more than $150 billion. The firm has offices in New York and London. For more information, please visit www.cdr-inc.com.

**About KKR**

KKR is a leading global investment firm that offers alternative asset management and capital markets and insurance solutions. KKR aims to generate attractive investment returns by following a patient and disciplined investment approach, employing world-class people, and supporting growth in its portfolio companies and communities. KKR sponsors investment funds that invest in private equity, credit and real assets and has strategic partners that manage hedge funds. KKR's insurance subsidiaries offer retirement, life and reinsurance products under the management of The Global Atlantic Financial Group. References to KKR's investments may include the activities of its sponsored funds and insurance subsidiaries. For additional information about KKR & Co. Inc. (NYSE: KKR), please visit KKR's website at www.kkr.com and on Twitter @KKR_Co.

19. On July 19, 2021, Defendants caused to be filed with the SEC a Definitive Proxy Statement (the "Proxy Statement") under the Exchange Act in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

20. The Proxy Statement, which recommends that Cloudera shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Cloudera's financial projections; and (ii) the financial analyses performed by Cloudera's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley"), in connection with its fairness opinion,

6

and information concerning the Company's selection of Morgan Stanley as its financial advisor.

21. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Recommendation of the Board of Directors and Reasons for the Merger; (ii) Opinion of Morgan Stanley & Co. LLC; and (iii) Management Projections.

22. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated August 25, 2021 shareholder vote on the Proposed Transaction, Cloudera shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Cloudera's Financial Projections

23. The Proxy Statement omits material information concerning Cloudera's financial projections.

24. With respect to Cloudera's financial projections, which are sometimes referred to in the Proxy Statement as the "Management Projections," the Proxy Statement fails to disclose: (1) all line items underlying (i) Revenue, (ii) Operating Income/EBIT, and (iii) Unlevered Free Cash Flow; (2) the Company's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

25. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor,

7

the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

26. When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP.

27. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**2. Material Omissions Concerning Morgan Stanley and its Financial Analyses**

28. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Morgan Stanley.

29. With respect to Morgan Stanley's "*Public Trading Comparables Analysis*," the Proxy Statement fails to disclose the individual multiples and financial metrics of each company Morgan Stanley observed in its analysis.

30. With respect to Morgan Stanley's "*Discounted Equity Value Analysis*," the Proxy Statement fails to disclose: (1) the levered free cash flow estimates for the Company under each of the "Street Case" and May 2021 Final Updated Forecasts; (2) the projected net cash of the Company; (3) the Company's estimated fully diluted shares outstanding; (4) the individual inputs and assumptions underlying the discount rate of 8.6%; and (5) the Company's estimated cost of equity.

31. The Proxy Statement fails to disclose the following concerning Morgan Stanley's "*Discounted Cash Flow Analysis*": (1) the "Street Case" forecasts relied upon in the analysis and all line items underlying unlevered free cash flow; (2) the terminal values for the Company; (3) the individual inputs and assumptions underlying the (i) perpetuity growth rates of 2.5% to 3.5%, and (ii) discount rates ranging from 7.1% to 8.9%; and (4) the number of outstanding shares of Cloudera common stock.[1]

32. The Proxy Statement fails to disclose the following concerning Morgan Stanley's "*Precedent Transactions Multiples Analysis*": (1) the closing and announcement dates of each transaction; (2) the total values of each transaction; and (3) the basis for selecting the representative ranges and utilizing the Street Case.

33. With respect to Morgan Stanley's "*Illustrative Precedent Premiums*" analysis, the Proxy Statement fails to disclose: (1) the transactions observed by Morgan Stanley in its analysis and a description explaining why those transactions were selected; and (2) the individual premiums paid therein.

34. With respect to Morgan Stanley's "*Equity Research Analysts' Future Price Targets*" analysis, the Proxy Statement fails to disclose: (1) the individual price targets observed by Morgan Stanley in its analysis; and (2) the sources thereof.

35. The Proxy Statement further fails to sufficiently disclose why the Company did not obtain a fairness opinion and/or second fairness opinion from a financial advisor other than Morgan Stanley or its affiliates, which received between $15 to $25 million in fees from CD&R

---

[1] While the Proxy Statement provides various sets of financial projections, including the May 2020 Forecasts, the December 2020 Board Plan, the March 2021 Board Plan, the May 2021 Final Updated Forecasts, and the Upside Scenario, Morgan Stanley utilized the Street Case forecasts in its fairness opinion but failed to disclose such forecasts.

and their affiliates, and approximately $100 million in fees from KKR and their affiliates, for providing financial advisory and financing services within the two years prior to the date of Morgan Stanley's fairness opinion.

36. The valuation methods, underlying assumptions, and key inputs used by Morgan Stanley in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of Morgan Stanley's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, the Company's shareholders are unable to fully understand Morgan Stanley's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

37. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

38. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

39. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the

mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

40. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

41. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

42. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

43. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

44. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

45. Each of the Individual Defendants was provided with or had unlimited access to

copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

47. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions

as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.    Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.    Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.    Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: July 20, 2021                              Respectfully submitted,

                                                            **HALPER SADEH LLP**

                                                            By: /s/ Daniel Sadeh
                                                            Daniel Sadeh, Esq.
                                                            Zachary Halper, Esq. (to be admitted *pro hac vice*)
                                                            667 Madison Avenue, 5th Floor
                                                            New York, NY 10065

Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
zhalper@halpersadeh.com

*Counsel for Plaintiff*